**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BASE ONE TECHNOLOGIES, INC.,** | |
| Plaintiff, | |
| v. | Civil Action No. 14-1520 (JEB) |
| **MOHAMMED ALI,** *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

      One reason that companies insert non-compete provisions in their employment contracts is to prevent their workers from stealing their clients. That, claims Plaintiff Base One Technologies, is precisely what happened here.

      Base One is an information-technology support firm that provides recruiting and staffing services to its clientele. Several years ago, it hired Defendants Mohammed Ali and Hossein Beyzavi and designated them to provide IT assistance to International Business Machines Corporation, one of Base One's bread-and-butter clients. According to Plaintiff, however, Defendants did more than assist: they exploited the access they had been granted and – while still employed with Base One – offered their services to IBM for full-time employment. That company ultimately hired both Defendants directly, thereby ousting Plaintiff from the picture and depriving it of potential revenue from continuing to staff those two positions.

      Aggrieved by this abrupt turn of events, Base One turned to the courts. Its Complaint presents a veritable cornucopia of claims, including, *inter alia*, breach of contract, breach of fiduciary duty and the duty of loyalty, tortious interference with business relations, and unjust enrichment. Defendants have now filed a Motion to Dismiss. Although some of Plaintiff's

allegations are facially deficient, others pass the relatively undemanding Rule 12(b)(6) bar. As a result, the Court will grant Defendants' Motion in part and deny it in part.

**I.      Background**

According to its Complaint – which at this juncture the Court must credit – Plaintiff Base One Technologies is a "technology engineering services and support firm," which recruits and staffs "a variety of IT disciplines," including "network infrastructure support, software development and application services, information security, enterprise databases and warehousing, backup and recovery strategies, and project management." Compl., ¶¶ 7-8. Its client base is principally comprised of companies operating within the telecommunications and financial spheres. See id., ¶ 9. The firm is incorporated under Delaware law and headquartered in New York. See id., ¶ 1.

Plaintiff's business model is fairly straightforward: it is essentially a matchmaker. Base One first confers with its clients to "determine their IT needs" and "the qualifications of the ideal candidate to provide those services." Id., ¶ 9. It then recruits, vets, and hires – as its own employees – appropriately credentialed individuals who possess the requisite technical ability. See id., ¶¶ 9-12. As the final step, the newly hired employees are then matched to specific client projects, earning revenue for Base One for the length of their placements. See id. Plaintiff's "continued relationship with its clients, as well as [its] continued relationship with its employees," are thus of "critical importance" to its success. Id., ¶ 17.

In December 2009, IBM engaged the firm to provide staffing assistance on a certain "Project." See id., ¶ 12. The Project is ongoing and fully funded through June 2015, with a total value of over $10 million. See id. To date, approximately 32 Base One employees have worked for IBM in connection with the Project. See id.

In February 2012, Plaintiff hired Defendant Mohammed Ali to provide engineering assistance for the Project in the District of Columbia. See id., ¶ 13. Over a year and a half later, in December 2013, Defendant Hossein Beyzavi was hired to do the same. See id., ¶ 14. As a condition of employment with Base One, Defendants signed identical "Confidence and Non-Compete Agreement[s]." See id., ¶¶ 15, 27; see also id., Exhs. A & B (Ali and Beyzavi Agreements).

Pursuant to Section 1 of the Agreements, each Defendant "acknowledge[d]" the "substantial time, effort and money" expended by Plaintiff in identifying potential client business and qualified employees. See Agreements, § 1(B). The Agreements further spelled out Base One's concern that

> the Employee will frequently be the principal intermediary and personal contact between [Base One] and its customers and it is, therefore, anticipated that because of the Employee's knowledge of the business of said persons or entities and the fact that personal loyalties may develop between the Employee and said persons or entities, such persons or entities might desire to place their IT business directly with the Employee rather than the Company at such time as the Employee is no longer employed by the Company.

Id., § 1(E).

Against that backdrop, Section 3 set forth certain restrictions that operate for the duration of an employee's tenure with Base One and for a one-year period thereafter. In relevant part, each Defendant agreed not to "market any Competitive type services directly or indirectly to any Base One clients" that had been assigned to him. See id., § 3(A). They also consented to refrain from

> solicit[ing], contact[ing], represent[ing], or offer[ing] to represent the Company's Full-Time Employees and/or Independent Contractors, whether or not such solicitation, contact, or offer was initiated, prompted or in any other way developed by the

3

>Employee or by the other Full-Time Employee or Independent Contractor . . . .

Id., § 3(B).  The parties further stipulated that, in the event of breach, Base One would be entitled to equitable and injunctive relief in addition to any other available remedies.  See id., § 6.  Finally, Section 10 dictated that each Agreement would "be governed by and construed in accordance with the laws of the State of New York."

All was quiet amongst the parties until June 2014.  Base One claims that, around that time, it learned that Ali and Beyzavi had "conspired with one another to approach, and subsequently approached, IBM to market their own services for full-time employment with IBM."  Compl., ¶ 23.  According to the Complaint, Defendants took these steps "while working for Base One on the Project" – that is, during the course of their employment with Base One.  Id.  "As a result of their overtures," alleges Plaintiff, "Defendants were hired by IBM to . . . perform[] materially the same services they had been providing to IBM through their employment with Base One and their assignment to the Project."  Id., ¶ 24.  Ali and Beyzavi began employment with IBM on or around June 10, 2014, thus "depriving Base One of substantial revenue it would have received for the continued placement of Defendants to IBM through the Project end date of June 2015."  Id., ¶ 25.

Dismayed at this perceived betrayal, Base One filed suit in this Court on September 5, 2014, asserting sundry contractual, tort, and fiduciary causes of action.  Defendants have now filed virtually identical Motions to Dismiss.  For the sake of simplicity, the Court refers to the two submissions jointly as "Defendants' Motion" or "MTD."

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a

4

motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation omitted).  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.    Analysis**

Plaintiff's Complaint advances eight distinct claims, each of which Defendants dispute: (1) breach of Section 3(A) of the Non-Compete Agreement; (2) breach of Section 3(B) of the same Agreement; (3) breach of fiduciary duty; (4) unfair competition; (5) tortious interference with prospective business relations; (6) unjust enrichment; (7) faithless servant; and (8) a count styled "injunctive relief."  Base One has since conceded the infirmity of the fourth and fifth causes of action.  See Opp. at 13 n.3.  The Court will take up each of the remaining counts *seriatim*, ultimately concluding that Counts Two and Eight should be dismissed, but that the rest survive Defendants' Motion.

5

At the outset, the Court notes that federal jurisdiction in this case is based on diversity of citizenship, see 28 U.S.C. § 1332, and that, accordingly, state law provides the substantive rules of law with regard to all claims.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Here, the Non-Compete Agreement executed by Defendants contains a choice-of-law provision stating that "it shall be governed by and construed in accordance with the laws of the State of New York."  Agreements, § 10.  Although a contractual choice-of-law provision does not bind parties with respect to non-contractual causes of action, see Minebea Co. v. Papst, 377 F. Supp. 2d 34, 38 (D.D.C. 2005), the parties in this case rely solely on New York law with respect to all of the counts.  The Court, therefore, follows suit.  See Piedmont Resolution, LLC v. Johnston, Rivlin & Foley, 999 F. Supp. 34, 39 (D.D.C. 1998) ("The parties have not raised any choice of law issues and, in their arguments in support of and in opposition to [the] motion for summary judgment, all parties have relied solely on District of Columbia law.  Accordingly, the Court will resolve the motion under District of Columbia law.").

    A.   Count I: Breach of Section 3(A)

Plaintiff's first claim is premised on Section 3(A) of the Non-Compete Agreement, which prohibits a Base One employee from "market[ing] any Competitive type services" to any Base One clients assigned to him.  The restriction, by its terms, extends throughout the duration of employment with Base One and for a year following termination.  The Complaint alleges that Defendants breached this restrictive covenant by marketing their services to IBM while still employed by Base One.  See Compl., ¶¶ 27-32.

To state a claim for breach of contract under New York law, a plaintiff must allege "(1) the existence of a valid, enforceable agreement; (2) performance of the contract by one party; (3) breach of the contract by the other party; and (4) damages."  Bridgeport Music, Inc. v. Universal

Music Grp., Inc., 440 F. Supp. 2d 342, 344-45 (S.D.N.Y. 2006). Defendants argue that Base One's claim is doubly flawed. They first assert that Plaintiff has not set forth sufficient factual allegations to establish that they <u>marketed</u> their services to IBM in breach of Section 3(A). Alternatively, they contend that the restrictive covenant is unreasonable – and, therefore, unenforceable. Neither argument proves persuasive.

1. *Breach*

In maintaining that no breach occurred, Defendants assert that Section 3(A)'s prohibition on the "market[ing]" of services does not prohibit the mere "offering" of services. <u>See</u> MTD at 4-6. According to Ali and Beyzavi, marketing requires "advertis[ing] or engag[ing] in other activities designed to either promote a competitive business or [one's] own services," and Base One failed to allege that they engaged in such activities. <u>See</u> <u>id.</u> at 4; <u>see also</u> Rep. at 2 (marketing "requires the advertising and running of a competing business"). They likewise stress that the Complaint fails to establish a link between IBM's decision to hire Defendants and their alleged wrongful acts. <u>See</u> MTD at 4.

The distinction Defendants attempt to draw between marketing and offering is untenable. Indeed, the dictionary defines "market" as "[t]o <u>offer</u> for sale." American Heritage Dictionary 1075 (5th ed. 2011) (emphasis added); <u>see also</u> Merriam-Webster Online Dictionary (online ed. 2014) (defining market as "to do things that cause people to know about and want to buy (something); to offer (something) for sale in a market"). And that is precisely what Base One alleged: that "Defendants approached IBM to <u>offer</u> their services to IBM as employees on a full-time basis." Compl., ¶ 30 (emphasis added). Plaintiff further bolstered this count by claiming that IBM hired Ali and Beyzavi "as a result of their overtures." <u>Id.</u>, ¶ 24. Nothing more is needed. Regardless of whether Defendants "advertised" their services, Plaintiff has alleged

sufficient facts (taken as true) to suggest that they "marketed" their services to IBM in violation of Section 3(A).

In rejoinder, Ali and Beyzavi stress that neither one held a "marketing position" within Base One. The Court is somewhat mystified as to why Defendants' titles at Base One would have any bearing on whether they marketed competitive services to IBM, regardless of how narrowly or broadly the term "market" is construed. Any employee – no matter his job description within Base One – could wrongfully engage in the marketing of competitive services to customers, thereby breaching the restrictive covenant contained in Section 3(A).

      2. *Enforceability*

Defendants' second contention – to wit, that Section 3(A) is unenforceable if read to prohibit the conduct alleged here – fares no better. Specifically, they assert that "Base One is asking the court to interpret 'market' as synonymous with the accepting of a position with IBM," and that the non-compete provision, so construed, is unreasonable. See Rep. at 3.

To begin with, Plaintiff is not asking the Court to read Section 3(A) in the expansive manner touted by Defendants. (Nor could such interpretation be squared with any legitimate definition of the term "market.") Instead, the facts presented in the Complaint suggest that Ali and Beyzavi actively induced IBM to hire them for full-time employment. As previously noted, Plaintiff alleged that Ali and Beyzavi "approached" IBM to offer their services as full-time employees, and that IBM hired them "as a result of their overtures." Compl., ¶¶ 24, 30. Such conduct cannot be described as mere acceptance of an open job position, and it is this conduct that Plaintiff justifiably maintains violated Section 3(A).

Setting aside Defendants' overreaching, the Court turns to the enforceability of Section 3(A) under an appropriate construction. Agreements "that restrict an employee's ability to

8

compete" are disfavored in New York, B.O. Tech., LLC v. Dray, 970 N.Y.S.2d 668, 673 (N.Y. Sup. Ct. 2013), but they are not *per se* unenforceable.  See Installed Bldg. Products, LLC v. Cottrell, No. 13-1112, 2014 WL 3729369, at *6 (W.D.N.Y. July 25, 2014).  In determining the validity of such restrictive covenants, courts are guided by a tripartite "reasonableness" standard.  See BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388-89 (N.Y. 1999).  Under the governing test, a restraint is reasonable if it "(1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public."  Id. (emphasis in original).  This analysis "focuses on the particular facts and circumstances giving context to the agreement," see id. at 390, and, unless a provision is impermissibly vague or plainly overbroad, often necessitates full development of the record.  See Installed Bldg., 2014 WL 3729369, at *6-8.  Consequently, a determination of unenforceability upon a motion to dismiss will often be premature.  See id.

As an initial foray, Plaintiff points out that BDO Seidman and its progeny concerned post-employment restrictive covenants – *i.e.*, covenants that "tend to prevent an employee from pursuing a similar vocation after termination of employment."  B.O. Tech., 970 N.Y.S.2d at 673.  Because the "vast majority" of Defendants' allegedly wrongful conduct occurred during their employment with Base One, Plaintiff emphatically declares the three-pronged reasonableness test inapposite here.  See Opp. at 6; see also Compl., ¶¶ 24, 30 (asserting that Defendants approached IBM during their employment with Base One).  The Court is not so certain.  Section 3(A) – as written – restricts the post-employment conduct of its employees in addition to their actions during employment.  New York law is not entirely clear as to whether employers can circumvent the reasonableness inquiry ordinarily applicable to such clauses by seeking to hold employees liable only for their pre-termination conduct.  That question need not be definitively

9

resolved here, however, as Section 3(A) survives dismissal even if the inquiry outlined above is assumed to be germane.

Base One has sufficiently alleged that Section 3(A) is properly tailored to address its legitimate business interest, satisfying the first prong of the BDO Seidman test. As a staffing and recruiting firm, Plaintiff's relationships with its clientele comprise its most valuable assets. See Opp. at 2. It invests considerable time, money, and effort to recruit and staff IT personnel in accordance with its clients' needs. See id. A Base One employee who offers his services directly to his assigned client "undercuts the core of Base One's business by stealing [its] time and energy spent, and business advantage built, on its unique skill of recruiting." Id. Base One thus has a legitimate interest in protecting against its employees' "competitive use of client relationships" that Base One enabled them to acquire through their work with and access to the firm's customers. BDO Seidman, 93 N.Y.2d at 392; see also B.O. Tech, 970 N.Y.S.2d at 673 (recognizing "legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer that has been created and maintained at the employer's expense to the employer's competitive detriment"); DeWitt Stern Grp., Inc. v. Eisenberg, No. 13-3060, 2014 WL 1388652, at *5 (S.D.N.Y. Apr. 9, 2014) (noting "employer's legitimate interest in client relationships it was instrumental in creating and fostering").

Section 3(A), moreover, is narrow in both time and scope. It restricts Defendants' conduct for only one year post-employment, see Natsource LLC v. Paribello, 151 F. Supp. 2d 465, 471 (S.D.N.Y. 2001), and its prohibition on marketing applies only to those customers to whom they were personally assigned. See BDO Seidman, 93 N.Y.2d at 391-92. Ali and Beyavi have proffered no reason to reach a contrary conclusion.

With regard to the second prong – hardship on the employee – Defendants remain on shaky ground.  Although they accuse Base One (with some exaggeration) of leaving them "penniless" and "prevent[ing] them from pursuing a similar vocation," MTD at 4, the narrowness of Section 3(A) cuts against their position.  Ali and Beyzavi are free to offer their IT and engineering expertise to any company other than IBM, the only client either was assigned to, and they are free to market their services even to IBM only one year after the termination of their employment with Base One.

As to the third prong of the reasonableness test, Defendants have not attempted to make any showing that Section 3(A) is injurious to the public.  Nor is the Court convinced that such an argument, if asserted, could gain any traction.  See BDO Seidman, 93 N.Y.2d at 393 (finding no injury to the public where the restraint would not "seriously impinge" on the availability of certain services in a region or "cause any significant dislocation in the market").  As the above discussion makes manifest, the Court cannot hold at this juncture that Section 3(A) is unenforceable as a matter of law.

    B.  Count II: Breach of Section 3(B)

In the second count of its Complaint, Plaintiff contends that Beyzavi and Ali breached Section 3(B) of the Agreement, which restricted them from "solicit[ing], contact[ing], represent[ing], or offer[ing] to represent the Company's Full-Time Employees and/or Independent Contractors."  Specifically, Plaintiff claims that Defendants solicited each other "by coordinating their departure to work for IBM."  Compl., ¶ 38.  Defendants, on the other hand, maintain that "one[-]on[-]one contact between two similarly situated employees does not rise to the level of solicitation."  Rep. at 4.  According to them, the clause should apply only where a

violator "represent[s] a competitive business" and gains "some benefit . . . from the act of solicitation." Id. at 5.

This back and forth over the proper interpretation of Section 3(B) calls attention to a more fundamental problem: its wording is so vague and ambiguous as to render it unenforceable. The provision prohibits soliciting or contacting Base One employees and independent contractors. But solicit or contact for what? The Agreement never says. Is an employee prohibited from contacting another employee about health insurance? From soliciting another employee to attend a political fundraiser? Although the Court can perhaps guess that Plaintiff meant to prohibit solicitation or contact for the purpose of employment elsewhere, the provision does not so specify. Particularly in light of New York's general hostility toward restrictive covenants in the context of employment, the Court will not redraft a poorly written, overbroad restraint in order to render it enforceable. See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 507 (S.D.N.Y. 2011) (finding "imprecise" and "ambiguous" non-compete provision "unenforceable as a matter of law"); Samy & Irina, Inc. v. Berezentseva, 899 N.Y.S.2d 63 (N.Y. Sup. Ct. 2009) (dismissing claim for violation of "unclear and ambiguous" non-compete provision). Base One's second contractual cause of action comes up short.

    C.  Count III: Breach of Fiduciary Duty

Plaintiff next charges that "[b]y virtue of their employment with Base One," Ali and Beyzavi owed the firm a fiduciary duty, which they breached by marketing themselves to IBM for full-time employment. See Compl., ¶¶ 43-46. Asserting that they were merely "low level IT employees" with an "arms-length business relationship" with Base One, and that a fiduciary duty requires more, Defendants move to dismiss this claim. See MTD at 6; Rep. at 5.

They are wrong on the law. In New York, "an employee-employer relationship is fiduciary," even vis-à-vis low-level employees. Fairfield Fin. Mortgage Grp., Inc. v. Luca, 584 F. Supp. 2d 479, 485 (E.D.N.Y. 2008) (agreeing with plaintiff there "that all employees have a fiduciary duty to their employers, regardless of their rank and the level of their position"); accord Amphenol Corp. v. Paul, 993 F. Supp. 2d 100, 113 (D. Conn. 2014) (interpreting New York law); Gluco Perfect, LLC v. Perfect Gluco Products, Inc., No. 14-1678, 2014 WL 4966102, at *22 (E.D.N.Y. Oct. 3, 2014); Design Strategies, Inc. v. Davis, 384 F. Supp. 2d 649, 659-60 (S.D.N.Y. 2005). Defendants' objection thus stumbles right out of the gate.

    D. Count VI: Unjust Enrichment

Moving now to Count VI, Plaintiff alleges that Ali and Beyzavi were unjustly enriched at its expense, and that "equity and good conscience militate against permitting [them] to retain the attendant benefits." Compl., ¶ 9. Defendants respond that the existence of the Non-Compete Agreement precludes Base One's quasi-contractual claim for unjust enrichment, and that, in any event, the Complaint failed to proffer a sufficient factual basis for this claim. The Court disagrees on both points.

Unjust enrichment is "an amorphous cause of action, but one which falls under the umbrella of quasi-contract, or contract implied-in-law." Michele Pommier Models, Inc. v. Men Women N.Y. Model Mgmt., Inc., 14 F. Supp. 2d 331, 338 (S.D.N.Y.1998), aff'd,173 F.3d 845 (2d Cir. 1999). It "contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." Georgia Malone & Co. v. Rieder, 973 N.E.2d 743, 746 (N.Y. 2012) (internal quotation marks omitted); Maalouf v. Salomon Smith Barney, Inc., No. 02-4770, 2003 WL 1858153, at *6 (S.D.N.Y. Apr. 10, 2003) ("Unjust enrichment is premised on the notion that where principles of contract law are inadequate to

compensate an unjustly deprived party, a court should resort to principles of equity."). Defendants' contention thus has some foundation: it is widely recognized that a plaintiff may not recover on a claim for unjust enrichment where there exists a governing contract between the parties. See Magi XXI, Inc. v. Stato Della Citta Del Vaticano, No. 07-2898, 2014 WL 2212021, at *8 (E.D.N.Y. May 23, 2014) ("[T]he existence of a contract between parties to a dispute ordinarily precludes recovery for unjust enrichment for events arising out of the same subject matter as the contract.") (internal quotation marks omitted).

That Base One "may only recover on one claim, either contract or quasi-contract," however, "certainly does not preclude [it] from pleading unjust enrichment in the alternative." Maalouf, 2003 WL 1858153, at *7. "Both Fed. R. Civ. P. 8(e)(2) and the pleading rules of New York State law permit the pleading of contradictory claims alleging both breach of a contract or, in the alternative, a quasi contract." Seiden Associates, Inc. v. ANC Holdings, Inc., 754 F. Supp. 37, 39 (S.D.N.Y. 1991). Particularly where the validity and scope of the underlying contractual agreement is disputed, as here, Plaintiff is not "required to guess" – at the pleading stage – "whether it will be successful on its contract . . . claims." St. John's Univ., New York v. Bolton, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010); see also Net2Globe Int'l, Inc. v. Time Warner Telecom of New York, 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003).

Defendants have one more arrow left in their quiver. They argue that even if Base One is permitted to plead quasi-contract in the alternative, the facts alleged do not "form a basis for an unjust enrichment claim." Rep. at 6. In other words, if Section 3(A) is ultimately found invalid or otherwise inapplicable to Ali's and Beyzavi's conduct, they claim there would be "no equitable basis" for recovery. Id.

"To prevail on a claim of unjust enrichment, a [p]laintiff must establish (1) that the defendant benefitted; (2) at the [p]laintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006) (quoting Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)). "The 'essence' of this claim 'is that one party has received money or a benefit at the expense of another.'" Kaye, 202 F.3d at 616 (quoting City of Syracuse v. R.A.C. Holding, Inc., 685 N.Y.S.2d 381, 381 (N.Y. App. Div. 1999)).

Drawing all reasonable inferences in Base One's favor, the Court concludes that it has set forth a cognizable claim. According to the Complaint, Defendants intentionally misappropriated the relationship and good will between IBM and Base One in a manner that inured to their personal benefit via their new contract with IBM. See Compl., ¶¶ 22-25, 30-31, 49, 60; see N. Shipping Funds I, LLC v. Icon Capital Corp., 998 F. Supp. 2d 301, 330 (S.D.N.Y. 2014) ("Unjust enrichment claims are not limited to tangible monetary enrichment, but also include the receipt of an intangible benefit at the expense of another."). This benefit was clearly acquired at Plaintiff's expense: it had invested a great deal of time and effort in cultivating its relationship with IBM and providing it with qualified IT staff to satisfy its needs. See id., ¶¶ 9-12. Defendants' actions, moreover, resulted in the loss of substantial revenue for the firm. See id., ¶¶ 9, 61. Inasmuch as Plaintiff, at this juncture, need only provide a short and plain statement articulating a plausible claim for unjust enrichment, see Twombly, 127 S. Ct. at 1975; Fed. R. Civ. P. 8, the Court finds it has met that burden.

E. Count VII: Faithless Servant

Count VII invokes the faithless-servant doctrine. Although seemingly plucked from the mouldering pages of a Victorian novel, that cause of action appears alive and well in 21st century

New York. See Webb v. Robert Lewis Rosen Associates, Ltd., No. 03-4275, 2003 WL 23018792, at *6 (S.D.N.Y. Dec. 23, 2003) ("Defendants' attempt to demonstrate that the faithless servant doctrine is no longer recognized or is inapposite is unavailing."), aff'd, 128 F. App'x 793 (2d Cir. 2005). Under that state's law, an employee "is obligated 'to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" Phansalkar v. Anderson Weinroth & Co., LP, 344 F.3d 184, 200 (2d Cir. 2003) (quoting W. Elec. Co. v. Brenner, 41 N.Y.2d 291, 295 (N.Y. 1977)). A faithless employee forfeits the right to compensation during the period of disloyalty. See Henry v. Concord Limousine, Inc., No. 13-0494, 2014 WL 297303, at *4 (E.D.N.Y. Jan. 24, 2014).

Plaintiff contends that Ali and Beyzavi acted "in direct contravention of their duty of loyalty" by offering their own competitive services to IBM during their employment with Base One, thereby exploiting the access Plaintiff had given them to its customers. See Compl., ¶ 64. Defendants, for their part, maintain that Base One cannot successfully make out a faithless-servant claim – for one reason only. According to them, such claims require an allegation that the employee used the employer's "time, facilities, or proprietary secrets in commission of offensive acts," and Base One did not so allege. See Rep. at 6; see also MTD at 8. Ali and Beyzavi rest their theory of the doctrine on a single case, Fada Int'l Corp. v. Cheung, 57 A.D.3d 406 (N.Y. App. Div. 2008).

Fada International does, on its face, provide some support for Defendants' view. There, the court affirmed the dismissal of a claim for breach of the duty of loyalty since there was no allegation that "defendants used plaintiff's time, facilities or proprietary secrets in setting up their new business." Id. at 406. But the faithless-servant doctrine is robustly applied in New York,

16

and many decisions expounding on the doctrine make no mention of this alleged imperative at all. See, e.g., Carco Grp. v. Maconachy, 383 F. App'x 73, 77 (2d Cir. 2010); Phansalkar, 344 F.3d at 200-04; Sanders v. Madison Square Garden, LP, No. 06-589, 2007 WL 1933933, at *3 (S.D.N.Y. July 2, 2007); Webb, 2003 WL 23018792, at *6; W. Elec. Co. v. Brenner, 41 N.Y.2d at 295; Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 928, 394 (1977) (citing Restatement (Second) of Agency (1958), § 469); see also 52 N.Y. Jur. 2d Employment Relations § 148 (expounding upon faithless-servant doctrine with no reference to these requirements).

Even decisions that do specifically refer to misuse of time, facilities, or proprietary secrets cannot, as a general matter, be read to create an inflexible pleading prerequisite. Rather, courts appear to invoke this triumvirate as illustrative of the sort of breaches of loyalty that might be deemed faithlessness. In Pure Power Boot Camp, for example, the court emphasized that an employee "is forbidden from obtaining an improper advantage at the principal's expense." 813 F. Supp. 2d at 521. Continuing, the court stated:

> Although an employee may, of course, make preparations to compete with his employer while still working for the employer, he or she may not do so at the employer's expense, and may not use the employer's resources, time, facilities, or confidential information; specifically, whether or not the employee has signed an agreement not-to-compete, the employee, while still employed by the employer, may not solicit clients of his employer . . . .

Id. at 521-22; see also Derven v. PH Consulting, Inc., 427 F. Supp. 2d 360, 371 (S.D.N.Y. 2006) ("It is well established that an employee is prohibited from acting in any manner inconsistent with his or her employment and must exercise good faith and loyalty in performing his or her duties and may not use his or her principal's time, facilities or proprietary secrets to build a competing business.") (internal quotation marks omitted and emphasis added).

17

This Court will not superimpose a rigid gloss on the faithless-servant doctrine that the New York courts have not, in the mine run of cases, seen fit to require. Defendants' sole objection thus fails, and Plaintiff's claim survives dismissal.

F. Count VIII: Injunctive Relief

Base One advances a claim for "injunctive relief" as its final cause of action. See Compl., ¶¶ 66-70. Injunctive relief, however, is not a freestanding cause of action, but rather – as its moniker makes clear – a form of relief to redress the other claims asserted by Plaintiff. See Guttenberg v. Emery, No. 13-2046, 2014 WL 1989564, at *6 (D.D.C. May 16, 2014) ("Count II of plaintiffs' amended complaint is not a separate cause of action or claim; rather, it is a request that the Court grant a particular form of relief (an injunction) . . . ."). The Court will thus dismiss Count VIII as a separate claim. See Fitts v. Fed. Nat. Mortgage Ass'n, 44 F. Supp. 2d 317, 330 (D.D.C. 1999) ("[T]he court strikes Count Five of the complaint as it states a form of relief and not a cause of action."), aff'd, 236 F.3d 1 (D.C. Cir. 2001).

This revision, however, is procedural rather than substantive – that is, it does not preclude Base One from seeking injunctive relief in the event that it ultimately prevails on one or more of its claims. See Guttenberg, 2014 WL 1989564, at *6 & n.5. Insofar as Defendants attack the substantive basis for such relief, it is premature at this stage to consider the propriety of any particular remedy. Should that question become relevant at a later point in the litigation, the Court will consider the parties' arguments at that time.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss as to Counts Two, Four, Five, and Eight of Plaintiff's Complaint, but deny it as to the remaining counts. An Order consistent with this Opinion shall issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: January 20, 2015